MABEL J. BUSH, as Administratrix, etc., Respondent, *v.* WILLIAM L. CROW CONSTRUCTION COMPANY, Appellant.

*Negligence — death — master and servant — improper scaffold — custom.*

Appeal from a judgment of the Supreme Court, entered in the New York county clerk's office April 7, 1917, upon a verdict, and also from an order entered April 13, 1917, denying a motion for a new trial.

Judgment and order reversed and new trial ordered, with costs to appel-

lant to abide event, on the ground that the finding of the jury that the scaffold was unsafe and that the decedent was free from contributory negligence was against the weight of the evidence. Present — Clarke, P. J., Laughlin, Dowling, Shearn and Merrell, JJ. Shearn and Merrell, JJ., dissented.

SHEARN, J. (dissenting): The defendant appeals from a judgment entered upon the verdict of a jury for $6,068.98 damages and costs. The action, by the widow, was brought under the Employers' Liability Act* and section 18 of the Labor Law† (relating to scaffolds) against the master to recover damages for the death of plaintiff's intestate, a bricklayer, by reason of the negligence of the former in providing for the deceased an improper scaffold, from which he fell to his death. The scaffold, which was located on the inside of the fourth floor of a building in course of construction, and was the ordinary bricklayer's scaffold for ordinary work, had become unsafe and unfit for the use of the deceased because defendant failed to carry up the erection of the westerly wall along with that of the southerly wall, thereby causing the " return angle " of the westerly wall, at its junction with the southerly wall, to be raised about five feet above his scaffold (while the rest of the westerly wall was six to eight inches below the scaffold), rendering it impossible for him to reach over its top and necessitating his reaching through a window opening in the wall in order to anchor his guide line for continuing the erection of the remainder of the westerly wall. The wall was twelve inches thick and the scaffold was two inches from it, so that the deceased had to stoop and reach forward fourteen inches from the edge of the scaffold, and then extend his reach an additional four to eight inches around the outside surface of the wall to the left of the window frame and from two and one-half to eight inches below the level of his feet, in order to shift and fasten his guide line for the next course, which was done by pulling out the anchoring nail and holding it in his left hand while driving it with a hammer in his right hand into the hard mortar joint between bricks in the outer surface of the wall, with nothing to protect him from the open space of four stories beneath. In doing this he lost his balance and fell. The plaintiff introduced evidence tending to show that it was and had been for many years the custom in the bricklaying trade in New York city, where the scaffold was behind an open window and the situation was such as to make it necessary to stand on the edge of the scaffold and to reach out through the window in order to shift the lead line, to extend the scaffold through the window by nailing crosswise a plank that would extend out into the window upon which cross plank the workmen might stand or kneel, thus largely eliminating the element of danger that resulted in the death of plaintiff's intestate. The defendant controverted the existence of the custom and the court submitted it to the jury to determine whether the custom existed. The appellant accordingly

* Labor Law (Consol. Laws, chap. 31; Laws of 1909, chap. 36), art. 14, as amd. by Laws of 1910, chap. 352.— [REP.

† Amd. by Laws of 1911, chap. 693.— [REP.

claims that it has been held liable not because the scaffold was proved to be unsafe and improper but because the defendant had not constructed the scaffold according to this alleged custom, whereas, this being an action under the statute, the defendant was only liable for failure to provide a safe and suitable scaffold. The court carefully instructed the jury over and over again that the defendant could not be held liable for failure to follow the alleged custom but only in the event that the jury found the scaffold to be unsafe, permitting, however, the jury to consider the failure to comply with the alleged custom as an aid in determining whether the defendant was negligent. There is no requirement in the statute that the scaffold should be constructed in any particular manner — so there was no violation of any express requirement of the statute. The scaffold merely had to be so constructed as to afford the plaintiff's intestate a reasonably safe place to work. It is conceded that the situation was one inherently dangerous. Of course there was no obligation to make the place safe in the sense of insuring workmen against injury. The obligation was to make it reasonably safe, which, as I apprehend it, means to take such precautions in designing and constructing the scaffold as experience shows to be reasonably necessary and practicable. In determining whether this requirement has been met, it seems to me obvious that it is entirely competent to prove that the defendant has omitted in its design and construction of the scaffold to provide the window crosspiece which, according to plaintiff's proof, is practicable and which would strongly tend to lessen the danger. That this is so is borne out by considering defendant's argument and also the general line of examination followed by its counsel on the trial. An effort was made all through the case and is made on this appeal to show that the scaffold that was supplied was the ordinary and usual scaffold from which the jury was asked to infer lack of negligence and the exercise of reasonable care. If such an inference follows from doing the ordinary thing, it seems to me that the inference of lack of care would follow from proof of defendant's omission to do the ordinary and usual thing, when that is fortified by proof that the usual and ordinary thing would lessen, if not obviate, the danger. (See *Drummond* v. *Norton Co.*, 156 App. Div. 126; affd., 213 N. Y. 670.) Whether the custom existed or not was sharply controverted, but the question was for the jury and so far as its finding involves sustaining plaintiff's witnesses on this head there is no legal justification, in my opinion, for holding that the verdict is against the weight of the evidence; especially is this so where plaintiff's witnesses as to the custom were disinterested and, of the two defendant's witnesses, one was the foreman on the job and the other was in its employment. It is contended that the plaintiff's intestate was guilty of contributory negligence as a matter of law in standing on the edge of the scaffold, reaching down and out through the window and around to fasten the lead line and thus voluntarily getting into a dangerous position resulting in his death. It must be remembered, however, that there had to be a lead line in order for the deceased and his fellow-workmen to do the very work that they were paid and ordered to do. It was not for them to say that they would not do it because it was dangerous.

The doctrine of assumption of risk does not apply. Then the defendant claims that the plaintiff's intestate adopted an unnecessarily dangerous method of doing the work. It claims first that he could have gone down to the floor below, leaving the scaffold, and reached up through the window and fastened the lead line. Possibly he could have, although it appears that from the position of the scaffold and the horses and considering the fact that the edge of the scaffold was only two inches away from the inside wall, this would have been a most unnatural course to have followed, even if possible. It certainly was not negligence as a matter of law for the plaintiff's intestate not to have followed this other alleged possible method. Again, it is said that he was guilty of negligence because he could have fastened the lead line at the side of the window instead of around on the outside corner. It would have been possible, yet the proof shows that it was fastened where and in the manner that lead lines are ordinarily fastened in bricklaying work. If this is so, it would not be negligence as a matter of law to follow the approved and usual method. The question was for the jury and the jury was carefully instructed that they could not find for the plaintiff if plaintiff's intestate was negligent. The verdict is a moderate one and I think the judgment and order should be affirmed, with costs. Merrell, J., concurred.